IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SONDRA HESCHT,**                                 Case Number 4:13cv2101

      Plaintiff,                                      Judge Donald C. Nugent

      v.                                              Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.                                      REPORT AND RECOMENDATION

## INTRODUCTION

Plaintiff Sondra Hescht seeks judicial review of Defendant Commissioner of Social Security's decision to deny Supplemental Security Income ("SSI") benefits. The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated September 20, 2013). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed for SSI on November 25, 2009 alleging disability due to bipolar disorder, migraines, back pain, depression, and asthma since her amended alleged onset date of November 25, 2009. (Tr. 13, 153, 167, 173). Her claims were denied initially and on reconsideration. (Tr. 91, 95, 101, 105). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 108). Plaintiff (represented by counsel) and a vocational expert ("VE") testified at the hearing, after which the ALJ found Plaintiff not disabled. (Tr. 10, 34). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the

Commissioner. (Tr. 1); 20 C.F.R. §§ 416.1455, 416.1481. On September 20, 2013, Plaintiff filed the instant case. (Doc. 1).

Prior to the instant case, Plaintiff filed for SSI on July 3, 2007, and alleged a disability onset date of March 15, 2001. (Tr. 13, 71). On October 15, 2009, an ALJ found Plaintiff was not disabled and restricted her to a range of medium work. (Tr. 68, 74). That decision was affirmed initially and on reconsideration. (Tr. 87, 88). The ALJ in the instant case determined she was not bound by this prior decision because Plaintiff amended her onset date to November 25, 2009, which was subsequent to the date of the initial disability determination. (Tr. 13). *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997); *see also* Acquiescence Ruling 98-4(6). Nevertheless, the instant ALJ believed the October 2009 decision had precedential value regarding Plaintiff's condition at that time. (Tr. 13).

<h2 style="text-align:center">FACTUAL BACKGROUND</h2>

### *Personal and Vocational History*

Born May 22, 1960, Plaintiff was 49 years old on the date her application was filed. (Tr. 25). She has an eleventh-grade education and no past relevant work experience. (Tr. 25, 42). At the hearing, Plaintiff had difficulty remembering her employment history but was able to recall brief stints as a cashier, fast food worker, and ceramics maker. (Tr. 45-50).

Plaintiff lived alone in subsidized housing. (Tr. 43-44). She said her children would sometimes shop for her, but she went to the grocery store twice per month for TV dinners, adding she did not usually cook a full meal for herself. (Tr. 55). She was able to perform household chores "sometimes" but said pain limited her ability to sweep the floors. (Tr. 58-59). Plaintiff had not obtained a new driver's license since her 1998 DUI conviction because she

could not see or sit well enough to drive. (Tr. 41). She said she did not drink alcohol, smoke, or take un-prescribed drugs. (Tr. 57, 60).

Plaintiff averred she could not work due to body pain and numbness causing a loss of control and sudden falls, headaches, inability to communicate with others, and depression. (Tr. 51, 53-54). She said the falls were due to low potassium, and with medication, she fell less frequently than she used to – only twice in the last six months. (Tr. 52). However, later in the hearing, Plaintiff said she would fall on the stairs a few times per week due to dizziness and poor eyesight. (Tr. 59). Regarding headaches, Plaintiff said medication did not help; a fact she did not tell her doctor because she did not want to constantly ask for stronger medication. (Tr. 54). She took Percocet three times per day, which she said relieved her pain "[a] little". (Tr. 59). Plaintiff alleged trouble remembering, concentrating, and focusing, and said she experienced crying spells in the past. (Tr. 58). Plaintiff said she generally did not have trouble getting along with people and had trouble breathing due to asthma. (Tr. 56-58). Plaintiff thought she could only stand for fifteen minutes, probably walk around the block, and lift "maybe ten pounds". (Tr. 56-57).

### *Medical Evidence*

On July 19, 2007, Plaintiff saw Ghazanfar Ahmed, M.D., for lower-back, shoulder, and right leg pain which had lasted several years. (Tr. 230). She said she had self-treated with ibuprofen and Tylenol but the pain was getting worse, especially with standing. (Tr. 230). Plaintiff also complained of severe depression and anxiety and had not seen a doctor in several years because she lost her medical card. (Tr. 230). In addition, Plaintiff developed dermatitis in the back of her neck. (Tr. 230). Dr. Ahmed indicated Plaintiff smoked one pack of cigarettes per day and conducted a physical examination, which was normal aside from a rash, positive straight

leg raise tests bilaterally, and lumbosacral tenderness. (Tr. 230). Dr. Ahmed assessed dermatitis, lumbosacral pain, depression, and anxiety, and prescribed medication accordingly. (Tr. 231).

Plaintiff returned to Dr. Ahmed on January 14, 2008 because she was out of blood pressure medication and complained of headaches, chest pain, and shortness of breath. (Tr. 229). Plaintiff's physical examination was unremarkable and Dr. Ahmed resumed Plaintiff's blood pressure medication but indicated her depression and asthma were stable. (Tr. 229).

The following month, Plaintiff told Dr. Ahmed she ran out of anxiety medication and was consequently feeling anxious. (Tr. 227). She complained of worsening headaches with photophobia, phonophobia, and some nausea and vomiting. (Tr. 227). Following an unremarkable physical examination, Dr. Ahmed prescribed Zomig and resumed Xanax. (Tr. 227).

Plaintiff sought treatment from Columbiana County Counseling Center ("Columbiana") on October 2, 2007 due to depression and difficulty sleeping. (Tr. 240-51, 255-56). She reported being on Celexa and Xanax but said she lost her medical benefits for failing to keep an appointment. (Tr. 240-51, 255-56).

Plaintiff sporadically followed up at Columbiana. On January 6, 2009, she was anxious and tearful. (Tr. 254). At a medication check on January 20, 2009, the treatment provider diagnosed bipolar disorder, indicated Plaintiff was angry about her cholesterol level, refused to have her blood drawn, and was angry about not being provided a high enough dose of Xanax. (Tr. 252). Plaintiff said she last worked as a babysitter. (Tr. 241). At the time, she lived with a relative. (Tr. 240). On July 29, 2009, Columbiana closed Plaintiff's case because she had not returned for treatment. (Tr. 234-38).

On February 16, 2009, K.A. Kaza, M.D., completed a mental status questionnaire where he noted Plaintiff's fair appearance, fair flow of conversation and speech, and poor abilities to remember, understand, and follow directions; maintain attention; sustain concentration; persist at tasks and complete them in a timely fashion; interact socially; and adapt. (Tr. 259-60). Dr. Kaza predicted Plaintiff would react poorly to pressure in a work setting that involved simple, routine, or repetitive tasks. (Tr. 260).

On February 1, 2009, Plaintiff underwent an initial psychiatric evaluation related to depression and stress. (Tr. 268). She did not report physical pain but said she was unable to perform daily activities and was not sleeping well. (Tr. 268). The treatment provider diagnosed major depressive disorder. (Tr. 276).

Thereafter, Plaintiff had several follow-up individual counseling sessions and periodic medication management appointments where she worked on coping strategies, medication compliance, awareness of symptoms, and ways to increase her circle of friends. (Tr. 290, 291-93, 296, 298, 301). Throughout her course of treatment spanning from February 1, 2009 to January 1, 2010, Plaintiff consistently said her medication was effective, her mood stabilized, and her depression, coping skills, and anxiety improved. (Tr. 280-81, 291, 296-97). She regularly appeared well-groomed, reported varying degrees of trouble sleeping, and often complained of situational family problems. (Tr. 279, 282-89, 290-93, 296-97).

Social worker Amy Frampton, LISW, completed a mental status questionnaire on January 31, 2010. (Tr. 263). Ms. Frampton noted Plaintiff visited with relatives occasionally and did not get along with former employers because the managers were "mean". (Tr. 262). However, Plaintiff was never disciplined or fired. (Tr. 262). When asked to provide examples of anything that might prevent work activities for a normal workday or workweek, Ms. Frampton

said Plaintiff would have a hard time dealing with people because of anxiety, would not handle stress well, and due to physical problems, could not stand. (Tr. 262). She reported Plaintiff cooked TV dinners, cleaned her house except for the floors, maintained personal hygiene, went shopping, banked and paid bills, and did not have hobbies. (Tr. 263).

Plaintiff visited M. Singh, M.D., primarily for medication management and prescription refills from March 12, 2008 to March 1, 2012. (Tr. 325-42, 423-42). She had a well-woman exam on May 11, 2009, which was unremarkable. (Tr. 344-61). On February 18, 2010, Dr. Singh noted Plaintiff had fallen four times in the past week. (Tr. 342). However, radiologic imaging of Plaintiff's right foot revealed no evidence of osseous, articular, or soft tissue abnormalities despite complaints of right foot pain and unsteady gait. (Tr. 365). On November 11, 2010, Dr. Singh described Plaintiff as "overmedicated", said she had not fallen for two weeks, and did not administer refills because Plaintiff told him she was "fine". (Tr. 427).

On April 27, 2010, Dr. Kaza evaluated Plaintiff's psychiatric health. (Tr. 416). Plaintiff said she was nervous and could not sleep while her disability application was being reevaluated. (Tr. 415). She also feared losing her medical card. (Tr. 415). Otherwise, she said her mood swings and anxiety had decreased. (Tr. 415). Socially, Plaintiff dropped out of school when she was seventeen-years-old because she was pregnant. (Tr. 416). While in school, Plaintiff received good grades but said she did not like it. (Tr. 416). On mental status examination, Plaintiff was well-groomed with clear speech, a withdrawn demeanor, auditory hallucinations, logical and concrete thought process, somewhat intermittent eye contact, and bizarre or phobic delusions. (Tr. 416). She had a depressed, anxious, angry, and irritable mood; constricted affect; was cooperative; exhibited a loss of interest; and had trouble with memory and ability to abstract. (Tr.

417). Dr. Kaza estimated Plaintiff had borderline intelligence and poor-to-fair insight and judgment. (Tr. 417). Dr. Kaza diagnosed bipolar and depressive disorders. (Tr. 417).

On May 19, 2010, Dr. Singh administered a stress test to address Plaintiff's dyspnea with exertion, hypercholesterolemia, asthma, chronic obstructive pulmonary disease ("COPD"), chest pain, and dizziness. (Tr. 385). The report indicated that Plaintiff had smoked one pack per day for the past thirty years but had quit three months ago. (Tr. 385). Plaintiff developed back pain, chest pressure, and shortness of breath during the infusion of Lexiscan, her hemodynamic response was normal, and the resting ECG demonstrated normal sinus rhythm and a normal pattern. (Tr. 385). The test was negative for ischemia. (Tr. 385).

On December 30, 2010, Dr. Singh wrote that Plaintiff could not work "secondary to multiple problems" including severe bipolar disorder, depression, possible connective tissue disease, and back and leg pain. (Tr. 409). He said she could not stand or sit for more than one half-hour. (Tr. 409).

On October 28, 2011, Dr. Kaza completed an updated adult diagnostic assessment where he indicated Plaintiff was stressed over her welfare benefits, depression, and anxiety. (Tr. 410). Plaintiff's mental status examination was unremarkable aside from a depressed and anxious mood and some impairments in memory and concentration. (Tr. 414).

Dr. Singh signed off on Plaintiff's self-reported abilities on February 1, 2012. (Tr. 421). There, Plaintiff said she could stand or walk for two hours in an eight-hour workday due to leg and back pain, sit for three hours in an eight-hour workday due to back pain, lift up to ten pounds, and would occasionally require additional breaks due to leg pain and migraines. (Tr. 421). In addition, Plaintiff said she experienced six-to-eight bad days per month during which she would not be able to complete an eight-hour shift. (Tr. 421).

On February 7, 2012, Dr. Kaza similarly signed off on Plaintiff's self-reported abilities. (Tr. 422). There, Plaintiff said she would often have difficulty interacting with supervisors and co-workers, and maintaining concentration, persistence, and pace during an eight-hour workday. (Tr. 422). She would have occasional difficulty managing a low-stress work environment and would miss six-to-eight days per month due to symptoms. (Tr. 422).

Plaintiff's friend, Rhonda L. Jones, wrote a statement regarding Plaintiff's disability on April 12, 2012. (Tr. 221). She said Plaintiff had "bad nerves", depression, did not like to leave her apartment, could not deal with people in the public, had leg pain and back pain, would sometimes fall, and had bad headaches. (Tr. 221). Ms. Jones said she could not see Plaintiff working "at all". (Tr. 221).

### State Agency Review and Examination

On February 9, 2010, state agency reviewing physician Paul Tangeman, Ph.D., reviewed Plaintiff's records and completed a psychiatric review technique and mental residual functional capacity ("RFC") assessment. (Tr. 306, 320). He opined that due to bipolar and depressive disorders, Plaintiff had mild limitations in ability to complete activities of daily living and moderate limitations in abilities to maintain social functioning, concentration, persistence, and pace. (Tr. 309, 316). Then, Dr. Tangeman adopted the prior ALJ's October 2009 mental RFC determination under *Drummond*, *supra*, which limited Plaintiff to work that entailed only routine, repetitive instructions and tasks within a low-stress environment without production line type of pace or independent decision making responsibilities, no interaction with the general public, and no more than occasional interaction with co-workers and supervisors. (Tr. 74, 322).

Consultative examiner Gabriel E. Sella, M.D., examined Plaintiff on March 9, 2010, and reported generally normal findings concerning strength, grasp, manipulation, pinch, fine

coordination, and range of motion in all extremities. (Tr. 367-70). In an accompanying report, Dr. Sella recounted Plaintiff's symptoms of back pain, migraine headaches, bipolar disorder, depression, and asthma. (Tr. 371). Dr. Sella said Plaintiff was a heavy smoker up until one year ago, heavy caffeine drinker, and denied use of alcohol. (Tr. 372, 374). Plaintiff did not use a cane and walked in and out of the exam office without difficulty. (Tr. 372). She had no trouble getting on and off the exam table or getting dressed. (Tr. 372). Plaintiff had normal judgment, insight, memory, and mental status but testing revealed severe anxiety. (Tr. 373). Dr. Sella concluded Plaintiff was capable of sitting without restrictions, standing and walking for twenty minutes at a time several times per day, lifting and carrying light weights several times a day, handling light objects, hearing, speaking, and traveling. (Tr. 374).

On April 20, 2010, state agency reviewing physician Leslie Green, M.D., reviewed Plaintiff's records and adopted the October 2009 RFC finding under *Drummand, supra*, which determined Plaintiff was capable of a range of medium work except no climbing of ladders, ropes, or scaffolds, and no exposure to temperature extremes, hazards, or environmental pollutants. (Tr. 74, 376-83). David Brock, D.O., affirmed Dr. Green's findings on September 8, 2010. (Tr. 408).

A second mental RFC assessment and psychiatric review technique was completed by state agency reviewing psychologist Todd Finnerty, Psy.D., on July 20, 2010. (Tr. 390, 394). There, Dr. Finnerty found Plaintiff was either not significantly limited or moderately limited in all areas of mental functioning due to major depressive and bipolar disorders. (Tr. 390-91, 397, 404). He concluded Plaintiff maintained the ability to work in an environment with infrequent, superficial social interaction with supervisors, co-workers, or the general public and without frequent changes or fast-paced production quotas. (Tr. 392).

9

***ALJ Decision***

The ALJ found Plaintiff had severe impairments of major depressive disorder, bipolar disorder, generalized anxiety disorder, migraine headaches, back pain/strain, and asthma. (Tr. 15). The ALJ then concluded Plaintiff did not meet or medically equal any listed impairment. (Tr. 16). Based on Plaintiff's impairments and the record, the ALJ found Plaintiff had the RFC to perform a range of light work but with the following nonexertional limitations: entails no climbing of ladders, ropes, or scaffolds; could occasionally climb ramps or stairs, balance, stoop, crouch, kneel, or crawl; entails no exposure to temperature extremes, hazards, or environmental pollutants; must be afforded the opportunity for brief, one-to-two minute changes of position at intervals not to exceed fifteen minutes without being off task; entails only routine, repetitive instructions, and tasks within a low-stress environment; entails no production line type of pace or independent decision making responsibilities; and entails no interaction with the general public and no more than occasional interaction with co-workers and supervisors. (Tr. 17).

Then, after considering VE testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff could perform work in the national economy as a laundry folder and garment maker and sorter. (Tr. 25-6). Therefore, the ALJ concluded Plaintiff was not disabled. (Tr. 26).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant

10

evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for SSI is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id*. The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

DISCUSSION

Plaintiff argues the ALJ: 1) improperly cited to and relied on medical evidence that was not in the administrative record; and 2) did not support the RFC determination with substantial evidence for various reasons, including improper treatment of opinion evidence and a "wholly unexplained" sit/stand option. (Doc. 17, at 2; Doc. 20). Each argument is addressed in turn.

***Record Evidence***

Plaintiff maintains the ALJ committed reversible error by improperly relying on Dr. Singh's July 2009 opinion and Dr. Kaza's July 2009 opinion because neither opinion is included in the instant record. (Doc. 17, at 5-7). In response, the Commissioner maintains the ALJ did not rely on the opinions, but simply noted she was rejecting them for the same reasons as the prior ALJ. (Doc. 18, at 11).

In support, Plaintiff relies in part on *Russell v. Comm'r of Soc. Sec.*, 32 F. App'x 737 (6th Cir. 2002) (per curiam), where the Sixth Circuit remanded because the Commissioner submitted a reconstructed file that lacked "much of the evidence relied upon by the [ALJ]." Indeed, in *Russell*, the Commissioner failed to file numerous lost exhibits, which the ALJ later cited as part

12

of his discussion on the plaintiff's medications, credibility, and severity of mental impairment, precluding the Court's meaningful review of the ALJ's decision. *Id.*, at 737. In other words, if an incomplete record prevents a court from determining whether a decision is supported by substantial evidence, remand is necessary. *See*, *Clarke v. Colvin*, 2014 WL 4605690, at *7 (E.D. Mich.) (remanding where Commissioner failed to include hearing transcript in the record); *Collins v. Astrue*, 2008 WL 817332, at *6 (E.D. Ky.) (affirming Commissioner's decision where the record was complete enough to engage in substantial evidence review but remanding where it was not).

Contrary to Plaintiff's argument, the ALJ's use of evidence outside the record does not automatically warrant remand as a matter of law. Rather, remand is only required where the court cannot engage in meaningful review of the ALJ's decision. For this reason, the undersigned will return to the ALJ's use of Dr. Singh's July 2009 opinion and Dr. Kaza's July 2009 opinion as part of its substantial evidence review, below.

***Treating Physician Rule***

Plaintiff objects to the ALJ's treatment of the opinions of Drs. Singh, Sella, Kaza, and the state agency examiners. (Doc. 17). This argument implicates the well-known treating physician rule.

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more

13

weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)).

A treating physician's opinion is given "controlling weight" if it is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id*. When a treating physician's opinion does not meet these criteria, an ALJ must weigh medical opinions in the record based on certain factors. *Rabbers v. Comm'r Soc. Sec. Admin*., 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id*.

Importantly, the ALJ must give "good reasons" for the weight given to a treating physician's opinion. *Id*. "Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (*quoting* SSR 96-2p, 1996 WL 374188, at *4). "Good reasons" are required even when the conclusion of the ALJ may be justified based on the record as a whole. *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004). A failure to follow this procedural requirement "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id*. (*citing Rogers*, 486 F.3d at 243). Accordingly, failure to give good reasons requires remand. *Id*. at 409–410.

Dr. Singh

Here, the ALJ afforded Dr. Singh's opinions little weight. (Tr. 22). In doing so, the ALJ reasoned Dr. Singh's December 2010 opinion did not offer any specific functional limitations

14

and speculated that Plaintiff "may have connective tissue disease" despite the fact the record was devoid of objective studies supporting that diagnosis. (Tr. 22, 409). Regarding Dr. Singh's February 2012 opinion, the ALJ held the opinion was not supported by Plaintiff's "very sparse treatment during the period at issue" and "noted" the former ALJ's discounting of Dr. Singh's previous opinion. (Tr. 22, 421). In the citation to the previous ALJ's discussion, the contents of Dr. Singh's 2009 opinion were summarized and discredited for being inconsistent with the evidence of record, Plaintiff's daily activities, and foundation on subjective statements. (Tr. 22-23). The instant ALJ concluded, "[t]he discrepancies in Dr. Singh's assessments are glaring", pointing out Plaintiff regained some abilities in standing and walking since the 2009 opinion yet had greater limitations in her ability to lift. (Tr. 23). Upon review, the ALJ provided good reasons for affording Dr. Singh's opinions little weight; namely, the ALJ challenged the opinions' supportability and consistency with the record.

Further, as more fully described by the Commissioner, the ALJ supported this finding with substantial evidence. (Doc. 18, at 6-7). To this end, the ALJ found Plaintiff's statements of debilitating pain were less than credible. (Tr. 19, 21-22). The ALJ also referred to Dr. Sella's generally normal physical findings, Plaintiff's treatment history consisting primarily of medication management, testimony that the frequency of falls had declined, Dr. Singh's discontinuing of Percocet suggesting Plaintiff's physical complaints did not warrant strong pain medication, Plaintiff's unwillingness to heed Dr. Singh's advice, her medication seeking behavior, and limited treatment history. (Tr. 20-21, 52, 252, 325-42, 367-70, 423-42, 427).

The ALJ's reference to Dr. Singh's 2009 opinion, which was not included in the record, was not error where it was done only to point out inconsistencies in Plaintiff's progress since that time. Plaintiff does not challenge the former ALJ's summary of the opinion, but rather claims the

15

use of the evidence is improper as a matter of law. As explained above, the Court finds Plaintiff's position unsupported. Importantly, even omitting the ALJ's use of this evidence, she still provided enough analysis to allow for meaningful review of her decision. For these reasons, the ALJ's treatment of Dr. Singh's opinions is supported by substantial evidence.

Dr. Sella

Next, Plaintiff challenges the ALJ's treatment of Dr. Sella's opinion. (Doc. 17, at 13-14; Tr. 367-74). The ALJ gave Dr. Sella's opinion great weight, explaining that Dr. Sella's generally normal physical findings were not consistent with the type of debilitating pain Plaintiff alleged. (Tr. 19-20). In addition, the ALJ noted Dr. Sella's comment that Plaintiff could perform a range of work activities. (Tr. 20). The ALJ cautioned that Dr. Sella's findings were "somewhat imprecise" because it was unclear what Dr. Sella meant by Plaintiff's ability to lift light weight. (Tr. 20). However, despite no clear evidence of worsening in Plaintiff's physical findings on the consultative examination, the ALJ accorded Plaintiff with the "utmost benefit of the doubt" and interpreted Dr. Sella's opinion as limiting Plaintiff to only light work activities. (Tr. 20-21). The ALJ added that Dr. Sella was a neutral consultative examiner, personally observed Plaintiff, and based his findings on objective testing. (Tr. 21).

Plaintiff does not contest the ALJ's reasons for affording Dr. Sella's opinion great weight, but rather argues the ALJ failed to include any "significant restriction" in Plaintiff's ability to stand or walk consistent with Dr. Sella's finding that Plaintiff could only stand and walk for twenty minutes at a time several times a day. (Doc. 17, at 14). Alternatively, Plaintiff claims the ALJ failed to sufficiently explain her decision to exclude such limitations. *Id*. Plaintiff's arguments are not well-taken.

In her RFC determination, the ALJ found Plaintiff was capable of performing a range of light work but she must be afforded the opportunity for brief, one-to-two minute changes of position at intervals not to exceed fifteen minutes without being off task. (Tr. 17). Simply put, this is a "significant restriction". Moreover, "even where an ALJ affords considerable and substantial weight to a medical opinion, there is no rule requiring an ALJ to incorporate verbatim into the RFC every finding contained in that opinion". *Rahrig v. Comm'r of SSA*, 2013 U.S. Dist. LEXIS 108117, at *5 (N.D. Ohio) (citing *Earls v. Comm'r of Soc. Sec.*, 2011 WL 3652435, * 5 (N.D. Ohio)). As discussed above, the ALJ allowed for meaningful judicial review of her decision with respect to Dr. Sella's opinion by commenting on the supportability and consistency of the opinion. Therefore, she did not violate the treating physician rule.

In a related argument, Plaintiff challenges the ALJ's inclusion of a sit/stand option in the RFC, arguing it is "impermissibly vague and inconsistent with unambiguous [a]gency policy." (Doc. 17, at 14). Elaborating, Plaintiff argues Social Security Ruling (SSR) 96-6p and 83-12 "specifically provide[] that the ALJ's findings, when a claimant must alternate sitting and standing, must be detailed and specific" and without such specificity, "it is unclear whether [Plaintiff's] true RFC is more like, for instance 'sedentary work', or more like 'light work'". (Doc. 17, at 14-15). For the following reasons, Plaintiff's argument is without merit.

As stated, in her RFC determination the ALJ found Plaintiff was capable of performing a range of light work but she must be afforded the opportunity for brief, one-to-two minute changes of position at intervals not to exceed fifteen minutes without being off task. (Tr. 17). These limitations are sufficiently "detailed and specific."

Moreover, although SSR 83-12, 1983 WL 31253, *4, notes that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will", it also explains:

"In cases of unusual limitation of ability to sit or stand, a V[E] should be consulted to clarify the implications for the occupational base." Here, the ALJ did just that; at the hearing, she asked the VE the extent to which brief, one-to-two minute changes of position at intervals not to exceed fifteen minutes without being off task would erode the occupational base for an individual with Plaintiff's background and RFC. (Tr. 64-65). The VE responded that it would restrict Plaintiff to light, and not medium work, adding there were jobs in significant numbers available with the restriction. (Tr. 65). The ALJ was entitled to rely on this testimony and accept it as substantial evidence of jobs which accommodate the limitations included in her hypothetical. *See Foy v. Sec'y of Health & Human Servs.*, 951 F.2d 349, at *2 (6th Cir. 1991) ("A VE's response to a hypothetical that accurately portrays an individual's impairments constitutes substantial evidence for determining whether a disability exists.").

Further, it is not uncommon for claimants to have RFCs allowing for light work with a sit/stand option, and the Sixth Circuit has not found the two to be incompatible. *See*, *e.g.*, *Lewis v. Sec'y of Health & Human Servs.*, 51 F.3d 272, at *1 (6th Cir. 1995) (affirming the Commissioner's decision that included an RFC of "a limited range of light work with a sit/stand option"). In fact, courts outside the circuit have confronted the exact argument Plaintiff makes and have determined the ALJ is entitled to rely on VE testimony about light jobs capable of being performed with a sit/stand option – wholly consistent with SSR 83-12. *See Harris v. Astrue*, 2010 WL 1027822, at *11 (D.S.C. 2010) (citing *Walls v. Barnhart*, 296 F.3d 287, 290–292 (4th Cir. 2002)). The sit/stand option merely modifies the range of light exertional work the ALJ found Plaintiff capable of performing.  Thus, the ALJ did not err by finding an RFC that allows for light work with a sit/stand option, and relying on VE testimony about jobs that accommodate that RFC.

Dr. Kaza

Regarding Dr. Kaza, Plaintiff claims the ALJ erred by not accepting his finding that she would have six-to-eight bad days per month and could not complete a full eight-hour workday. (Doc. 17, at 19; Tr. 259-60). In addition, Plaintiff claims the ALJ's decision was "devoid of any independent analysis of Dr. Kaza's opinion or evaluation of the opinion in light of the medical evidence *in the current record*." (Doc. 17, at 19-20). However, following careful review of the ALJ's decision, the undersigned concludes the ALJ provided good reasons for the weight afforded to Dr. Kaza's opinion and supported that decision with substantial evidence from the instant record.

Indeed, the ALJ afforded Dr. Kaza's opinion little weight because Dr. Kaza merely described all areas of Plaintiff's mental functioning as "poor", challenging the supportability of Dr. Kaza's findings. (Tr. 23). In addition, the ALJ excerpted the prior ALJ's treatment of Dr. Kaza's previous opinion to find Plaintiff's condition had not worsened since that time. (Tr. 24). When considered from this limited purpose, the undersigned finds no error in the ALJ's analysis. What is more, the ALJ concluded Plaintiff's limited treatment history reflected at most, moderate symptoms; in doing so, she commented on the opinion's consistency with the record. (Tr. 24).

Simply stated, the ALJ provided good reasons for affording Dr. Kaza's opinion little weight. *Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (noting the "good reasons" rule does not require an "exhaustive factor-by-factor analysis"). Moreover, because the Court is able to clearly consider the ALJ's treatment of the opinion as part of a substantial evidence review, the ALJ's limited, indirect use of Dr. Kaza's former opinion was not in error.

State Agency Psychologists

Last, Plaintiff challenges the ALJ's failure to include "all of the limitations" in the state agency psychologists' assessments. (Doc. 17, at 20-21). However, as mentioned, the fact that the ALJ gave significant weight to the opinions of Drs. Finnerty and Tangeman without adopting either verbatim does not automatically indicate the ALJ's RFC is not supported by substantial evidence. Indeed, there is a difference between medical opinions and an RFC finding. The ALJ, not a medical source, is tasked with making the latter determination. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."). The two assessments are not synonymous, and need not be identical to be compatible. SSR 96-5p, 1996 WL 374183, at *5 ("Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the [RFC] assessment."). Therefore, the ALJ is only required to incorporate into the RFC those portions of the state agency psychologists' opinions which she finds credible, and Plaintiff's argument to the contrary is not well-taken.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner's decision denying SSI benefits supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

s/James R. Knepp, II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified

time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).