IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| SONDRA HESCHT, | ) | CASE NO.  4:13 CV 2101 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | Magistrate Judge James R. Knepp II |
| | ) | |
| Defendant. | ) | MEMORANDUM OPINION |

This matter is before the Court on the Report and Recommendation of Magistrate Judge

James R. Knepp II (Docket #21), recommending that the Commissioner of Social Security's

final determination denying Plaintiff, Sondra Hescht's application Supplemental Security

Income be affirmed.

**Factual and Procedural Background**

As set forth by the Magistrate Judge, the factual and procedural history of this case is as

follows:

**PROCEDURAL BACKGROUND**

Plaintiff filed for SSI on November 25, 2009 alleging disability due to
bipolar disorder, migraines, back pain, depression, and asthma since her amended
alleged onset date of November 25, 2009. (Tr. 13, 153, 167, 173). Her claims
were denied initially and on reconsideration. (Tr. 91, 95, 101, 105). Plaintiff then
requested a hearing before an administrative law judge ("ALJ").  (Tr. 108).
Plaintiff (represented by counsel) and a vocational expert ("VE") testified at the

hearing, after which the ALJ found Plaintiff not disabled. (Tr. 10, 34). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 416.1455, 416.1481. On September 20, 2013, Plaintiff filed the instant case. (Doc. 1).

Prior to the instant case, Plaintiff filed for SSI on July 3, 2007, and alleged a disability onset date of March 15, 2001. (Tr. 13, 71). On October 15, 2009, an ALJ found Plaintiff was not disabled and restricted her to a range of medium work. (Tr. 68, 74). That decision was affirmed initially and on reconsideration. (Tr. 87, 88). The ALJ in the instant case determined she was not bound by this prior decision because Plaintiff amended her onset date to November 25, 2009, which was subsequent to the date of the initial disability determination. (Tr. 13). Drummond v. Comm'r of Soc. Sec., 126 F.3d 837, 842 (6th Cir. 1997); see also Acquiescence Ruling 98-4(6).  Nevertheless, the instant ALJ believed the October 2009 decision had precedential value regarding Plaintiff's condition at that time. (Tr. 13).

## FACTUAL BACKGROUND

### *Personal and Vocational History*

Born May 22, 1960, Plaintiff was 49 years old on the date her application was filed. (Tr. 25). She has an eleventh-grade education and no past relevant work experience. (Tr. 25, 42). At the hearing, Plaintiff had difficulty remembering her employment history but was able to recall brief stints as a cashier, fast food worker, and ceramics maker. (Tr. 45-50).

Plaintiff lived alone in subsidized housing. (Tr. 43-44). She said her children would sometimes shop for her, but she went to the grocery store twice per month for TV dinners, adding she did not usually cook a full meal for herself. (Tr. 55). She was able to perform household chores "sometimes" but said pain limited her ability to sweep the floors. (Tr. 58-59). Plaintiff had not obtained a new driver's license since her 1998 DUI conviction because she could not see or sit well enough to drive. (Tr. 41). She said she did not drink alcohol, smoke, or take un-prescribed drugs. (Tr. 57, 60).

Plaintiff averred she could not work due to body pain and numbness causing a loss of control and sudden falls, headaches, inability to communicate with others, and depression. (Tr. 51, 53-54). She said the falls were due to low potassium, and with medication, she fell less frequently than she used to – only twice in the last six months. (Tr. 52). However, later in the hearing, Plaintiff said she would fall on the stairs a few times per week due to dizziness and poor eyesight. (Tr. 59). Regarding headaches, Plaintiff said medication did not help; a fact she did not tell her doctor because she did not want to constantly ask for

stronger medication. (Tr. 54). She took Percocet three times per day, which she said relieved her pain "[a] little". (Tr. 59). Plaintiff alleged trouble remembering, concentrating, and focusing, and said she experienced crying spells in the past. (Tr. 58). Plaintiff said she generally did not have trouble getting along with people
and had trouble breathing due to asthma. (Tr. 56-58). Plaintiff thought she could only stand for fifteen minutes, probably walk around the block, and lift "maybe ten pounds". (Tr. 56-57).

### Medical Evidence

On July 19, 2007, Plaintiff saw Ghazanfar Ahmed, M.D., for lower-back, shoulder, and right leg pain which had lasted several years. (Tr. 230). She said she had self-treated with ibuprofen and Tylenol but the pain was getting worse, especially with standing. (Tr. 230). Plaintiff also complained of severe depression and anxiety and had not seen a doctor in several years because she lost her medical card. (Tr. 230). In addition, Plaintiff developed dermatitis in the back of her neck. (Tr. 230). Dr. Ahmed indicated Plaintiff smoked one pack of cigarettes per day and conducted a physical examination, which was normal aside from a rash, positive straight leg raise tests bilaterally, and lumbosacral tenderness. (Tr. 230). Dr. Ahmed assessed dermatitis, lumbosacral pain, depression, and anxiety, and prescribed medication accordingly. (Tr. 231).

Plaintiff returned to Dr. Ahmed on January 14, 2008 because she was out of blood pressure medication and complained of headaches, chest pain, and shortness of breath. (Tr. 229). Plaintiff's physical examination was unremarkable and Dr. Ahmed resumed Plaintiff's blood pressure medication but indicated her depression and asthma were stable. (Tr. 229).

The following month, Plaintiff told Dr. Ahmed she ran out of anxiety medication and was consequently feeling anxious. (Tr. 227). She complained of worsening headaches with photophobia, phonophobia, and some nausea and vomiting. (Tr. 227). Following an unremarkable physical examination, Dr. Ahmed prescribed Zomig and resumed Xanax. (Tr. 227).

Plaintiff sought treatment from Columbiana County Counseling Center ("Columbiana") on October 2, 2007 due to depression and difficulty sleeping. (Tr. 240-51, 255-56). She reported being on Celexa and Xanax but said she lost her medical benefits for failing to keep an appointment. (Tr. 240-51, 255-56).

Plaintiff sporadically followed up at Columbiana. On January 6, 2009, she was anxious and tearful. (Tr. 254). At a medication check on January 20, 2009, the treatment provider diagnosed bipolar disorder, indicated Plaintiff was angry about her cholesterol level, refused to have her blood drawn, and was angry about

not being provided a high enough dose of Xanax. (Tr. 252). Plaintiff said she last worked as a babysitter. (Tr. 241). At the time, she lived with a relative. (Tr. 240). On July 29, 2009, Columbiana closed Plaintiff's case because she had not returned for treatment. (Tr. 234-38).

On February 16, 2009, K.A. Kaza, M.D., completed a mental status questionnaire where he noted Plaintiff's fair appearance, fair flow of conversation and speech, and poor abilities to remember, understand, and follow directions; maintain attention; sustain concentration; persist at tasks and complete them in a timely fashion; interact socially; and adapt. (Tr. 259-60). Dr. Kaza predicted Plaintiff would react poorly to pressure in a work setting that involved simple, routine, or repetitive tasks. (Tr. 260).

On February 1, 2009, Plaintiff underwent an initial psychiatric evaluation related to depression and stress. (Tr. 268). She did not report physical pain but said she was unable to perform daily activities and was not sleeping well. (Tr. 268). The treatment provider diagnosed major depressive disorder. (Tr. 276).

Thereafter, Plaintiff had several follow-up individual counseling sessions and periodic medication management appointments where she worked on coping strategies, medication compliance, awareness of symptoms, and ways to increase her circle of friends. (Tr. 290, 291-93, 296, 298, 301). Throughout her course of treatment spanning from February 1, 2009 to January 1, 2010, Plaintiff consistently said her medication was effective, her mood stabilized, and her depression, coping skills, and anxiety improved. (Tr. 280-81, 291, 296-97). She regularly appeared well-groomed, reported varying degrees of trouble sleeping, and often complained of situational family problems. (Tr. 279, 282-89, 290-93, 296-97).

Social worker Amy Frampton, LISW, completed a mental status questionnaire on January 31, 2010. (Tr. 263). Ms. Frampton noted Plaintiff visited with relatives occasionally and did not get along with former employers because the managers were "mean". (Tr. 262). However, Plaintiff was never disciplined or fired. (Tr. 262). When asked to provide examples of anything that might prevent work activities for a normal workday or workweek, Ms. Frampton said Plaintiff would have a hard time dealing with people because of anxiety, would not handle stress well, and due to physical problems, could not stand. (Tr. 262). She reported Plaintiff cooked TV dinners, cleaned her house except for the floors, maintained personal hygiene, went shopping, banked and paid bills, and did not have hobbies. (Tr. 263).

Plaintiff visited M. Singh, M.D., primarily for medication management and prescription refills from March 12, 2008 to March 1, 2012. (Tr. 325-42, 423-42). She had a well-woman exam on May 11, 2009, which was

-4-

unremarkable. (Tr. 344-61). On February 18, 2010, Dr. Singh noted Plaintiff had fallen four times in the past week. (Tr. 342). However, radiologic imaging of Plaintiff's right foot revealed no evidence of osseous, articular, or soft tissue abnormalities
despite complaints of right foot pain and unsteady gait. (Tr. 365). On November 11, 2010, Dr. Singh described Plaintiff as "overmedicated", said she had not fallen for two weeks, and did not administer refills because Plaintiff told him she was "fine". (Tr. 427).

On April 27, 2010, Dr. Kaza evaluated Plaintiff's psychiatric health. (Tr. 416). Plaintiff said she was nervous and could not sleep while her disability application was being reevaluated.  (Tr. 415). She also feared losing her medical card. (Tr. 415). Otherwise, she said her mood swings and anxiety had decreased. (Tr. 415). Socially, Plaintiff dropped out of school when she was seventeen-years-old because she was pregnant. (Tr. 416). While in school, Plaintiff received good grades but said she did not like it. (Tr. 416). On mental status examination, Plaintiff was well-groomed with clear speech, a withdrawn demeanor, auditory hallucinations, logical and concrete thought process, somewhat intermittent eye contact, and bizarre or phobic delusions.  (Tr. 416). She had a depressed, anxious, angry, and irritable mood; constricted affect; was cooperative; exhibited a loss of interest; and had trouble with memory and ability to abstract. (Tr. 417). Dr. Kaza estimated Plaintiff had borderline intelligence and poor-to-fair insight and judgment. (Tr. 417). Dr. Kaza diagnosed bipolar and depressive disorders. (Tr. 417).

On May 19, 2010, Dr. Singh administered a stress test to address Plaintiff's dyspnea with exertion, hypercholesterolemia, asthma, chronic obstructive pulmonary disease ("COPD"), chest pain, and dizziness. (Tr. 385). The report indicated that Plaintiff had smoked one pack per day for the past thirty years but had quit three months ago. (Tr. 385). Plaintiff developed back pain, chest pressure, and shortness of breath during the infusion of Lexiscan, her hemodynamic response was normal, and the resting ECG demonstrated normal sinus rhythm and a normal pattern. (Tr. 385). The test was negative for ischemia. (Tr. 385).

On December 30, 2010, Dr. Singh wrote that Plaintiff could not work "secondary to multiple problems" including severe bipolar disorder, depression, possible connective tissue disease, and back and leg pain. (Tr. 409). He said she could not stand or sit for more than one half-hour. (Tr. 409).

On October 28, 2011, Dr. Kaza completed an updated adult diagnostic assessment where he indicated Plaintiff was stressed over her welfare benefits, depression, and anxiety. (Tr. 410).  Plaintiff's mental status examination was unremarkable aside from a depressed and anxious mood and some impairments in

-5-

memory and concentration. (Tr. 414).

Dr. Singh signed off on Plaintiff's self-reported abilities on February 1, 2012. (Tr. 421).  There, Plaintiff said she could stand or walk for two hours in an eight-hour workday due to leg and back pain, sit for three hours in an eight-hour workday due to back pain, lift up to ten pounds, and would occasionally require additional breaks due to leg pain and migraines. (Tr. 421). In addition, Plaintiff said she experienced six-to-eight bad days per month during which she would not be able to complete an eight-hour shift. (Tr. 421).

On February 7, 2012, Dr. Kaza similarly signed off on Plaintiff's self-reported abilities.  (Tr. 422). There, Plaintiff said she would often have difficulty interacting with supervisors and co-workers, and maintaining concentration, persistence, and pace during an eight-hour workday.  (Tr. 422). She would have occasional difficulty managing a low-stress work environment and
would miss six-to-eight days per month due to symptoms. (Tr. 422).

Plaintiff's friend, Rhonda L. Jones, wrote a statement regarding Plaintiff's disability on April 12, 2012. (Tr. 221). She said Plaintiff had "bad nerves", depression, did not like to leave her apartment, could not deal with people in the public, had leg pain and back pain, would sometimes fall, and had bad headaches. (Tr. 221). Ms. Jones said she could not see Plaintiff working "at all". (Tr. 221).

### State Agency Review and Examination

On February 9, 2010, state agency reviewing physician Paul Tangeman, Ph.D., reviewed Plaintiff's records and completed a psychiatric review technique and mental residual functional capacity ("RFC") assessment. (Tr. 306, 320). He opined that due to bipolar and depressive disorders, Plaintiff had mild limitations in ability to complete activities of daily living and moderate limitations in abilities to maintain social functioning, concentration, persistence, and pace. (Tr. 309, 316). Then, Dr. Tangeman adopted the prior ALJ's October 2009 mental RFC determination under Drummond, supra, which limited Plaintiff to work that entailed only routine, repetitive instructions and tasks within a low-stress environment without production line type of pace or independent decision making responsibilities, no interaction with the general public, and no more than occasional interaction with co-workers and supervisors. (Tr. 74, 322).

Consultative examiner Gabriel E. Sella, M.D., examined Plaintiff on March 9, 2010, and reported generally normal findings concerning strength, grasp, manipulation, pinch, fine coordination, and range of motion in all extremities. (Tr. 367-70). In an accompanying report, Dr. Sella recounted Plaintiff's symptoms of back pain, migraine headaches, bipolar disorder, depression, and asthma. (Tr. 371). Dr. Sella said Plaintiff was a heavy smoker up until one year ago, heavy caffeine drinker, and denied use of alcohol. (Tr. 372,

374). Plaintiff did not use a cane and walked in and out of the exam office without difficulty. (Tr. 372). She had no trouble getting on and off the exam table or getting dressed. (Tr. 372). Plaintiff had normal judgment, insight, memory, and mental status but testing revealed severe anxiety. (Tr. 373). Dr. Sella concluded Plaintiff was capable of sitting without restrictions, standing and walking for twenty minutes at a time several times per day, lifting and carrying light weights several times a day, handling light objects, hearing, speaking, and traveling. (Tr. 374).

On April 20, 2010, state agency reviewing physician Leslie Green, M.D., reviewed Plaintiff's records and adopted the October 2009 RFC finding under Drummand, supra, which determined Plaintiff was capable of a range of medium work except no climbing of ladders, ropes, or scaffolds, and no exposure to temperature extremes, hazards, or environmental pollutants. (Tr. 74, 376-83). David Brock, D.O., affirmed Dr. Green's findings on September 8, 2010. (Tr. 408).

A second mental RFC assessment and psychiatric review technique was completed by state agency reviewing psychologist Todd Finnerty, Psy.D., on July 20, 2010. (Tr. 390, 394). There, Dr. Finnerty found Plaintiff was either not significantly limited or moderately limited in all areas of mental functioning due to major depressive and bipolar disorders. (Tr. 390-91, 397, 404). He concluded Plaintiff maintained the ability to work in an environment with infrequent, superficial social interaction with supervisors, co-workers, or the general public and without frequent changes or fast-paced production quotas. (Tr. 392).

### ALJ Decision

The ALJ found Plaintiff had severe impairments of major depressive disorder, bipolar disorder, generalized anxiety disorder, migraine headaches, back pain/strain, and asthma. (Tr. 15). The ALJ then concluded Plaintiff did not meet or medically equal any listed impairment. (Tr. 16). Based on Plaintiff's impairments and the record, the ALJ found Plaintiff had the RFC to perform a range of light work but with the following nonexertional limitations: entails no climbing of ladders, ropes, or scaffolds; could occasionally climb ramps or stairs, balance, stoop, crouch, kneel, or crawl; entails no exposure to temperature extremes, hazards, or environmental pollutants; must be afforded the opportunity for brief, one-to-two minute changes of position at intervals not to exceed fifteen minutes without being off task; entails only routine, repetitive instructions, and tasks within a low-stress environment; entails no production line type of pace or independent decision making responsibilities; and entails no interaction with the general public and no more than occasional interaction with co-workers and supervisors. (Tr. 17).

Then, after considering VE testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff could perform work in the national

economy as a laundry folder and garment maker and sorter. (Tr. 25-6). Therefore, the ALJ concluded Plaintiff was not disabled. (Tr. 26).
Report and Recommendation at pp. 2-10. (Footnotes omitted).

### Report and Recommendation

Plaintiff filed her Complaint with this Court on September 20, 2013, challenging the final decision of the Commissioner. (Docket #1.) On November 24, 2014, the Magistrate Judge issued his Report and Recommendation. (Docket #21.) The Magistrate Judge found the Commissioner's decision denying Supplemental Security Income benefits to be supported by substantial evidence. On December 5, 2014, Plaintiff filed her Objection to the Report and Recommendation. (Docket #22.) On December 16, 2014, the Commissioner filed a Response to Plaintiff's Objection. (Docket #23.)

### Standard of Review for a Magistrate Judge's Report and Recommendation

The applicable district court standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to the report. When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case *de novo*. FED. R. CIV. P. 72(b) provides:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

The standard of review for a magistrate judge's report and recommendation is distinct from the standard of review for the Commissioner of Social Security's decision regarding benefits. Judicial review of the Commissioner's decision, as reflected in the decisions of the ALJ, is limited to whether the decision is supported by substantial evidence. *See Smith v. Secretary of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged

conclusion, even if that evidence could support a decision the other way." *Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (citation omitted).

**Conclusion**

This Court has reviewed the Magistrate Judge's Report and Recommendation *de novo* and has considered all of the pleadings, transcripts, and filings of the parties, as well as the objections to the Report and Recommendation filed by Plaintiff. After careful evaluation of the record, this Court adopts the findings of fact and conclusions of law of the Magistrate Judge as its own.

Magistrate Judge Knepp thoroughly and exhaustively reviewed this case, and correctly found the Commissioner's decision denying Supplemental Security Income benefits to be supported by substantial evidence. Accordingly, the Report and Recommendation of Magistrate Judge Knepp (Document # 21) is hereby ADOPTED. The Commissioner's final determination denying Plaintiff's application for Supplemental Security Income benefits is hereby AFFIRMED.

This case is hereby TERMINATED.

IT IS SO ORDERED.

s/Donald C. Nugent
DONALD C. NUGENT
United States District Judge


DATED: January 9, 2015

-9-